# STATE OF WEST VIRGINIA

## SUPREME COURT OF APPEALS

**PAMELA J. KEFFER,**
**Claimant Below, Petitioner**

FILED

December 11, 2020
**EDYTHE NASH GAISER**, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**vs.)   No. 19-1061** (BOR Appeal No. 2054243)
          (Claim No. 2017000807)

**WV REGIONAL JAIL & CORRECTIONAL FACILITY,**
**Employer Below, Respondent**


## MEMORANDUM DECISION

Petitioner Pamela J. Keffer, by Counsel Reginald D. Henry, appeals the decision of the West Virginia Workers' Compensation Board of Review ("Board of Review"). The West Virginia Regional Jail & Correctional Facility, by Counsel Melissa M. Strickler, filed a timely response.

The issue on appeal is whether Ms. Keffer is entitled to an additional permanent partial disability award in her claim. On March 19, 2018, the claims administrator granted Ms. Keffer a 1% permanent partial disability award for her right knee injury of June 30, 2016.  The Workers' Compensation Office of Judges ("Office of Judges") affirmed the 1% award in a Decision dated May 8, 2019. This appeal arises from the Board of Review's Order dated October 21, 2019, in which the Board of Review affirmed the decision of the Office of Judges.

This Court has considered the parties' briefs and the record on appeal. The facts and legal arguments are adequately presented, and the decisional process would not be significantly aided by oral argument. Upon consideration of the standard of review, the briefs, and the record presented, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision is appropriate under Rule 21 of the Rules of Appellate Procedure.

Ms. Keffer was employed at the Department of Military Affairs and Public Safety as a Correctional Officer II, when she injured her right knee when stepping down from a transportation vehicle on June 30, 2016. She was initially treated at MedExpress Urgent Care in Beckley, West Virginia on July 4, 2016. She reported that she had an onset of right knee pain about a week prior to her examination. She also reported that she was told by her primary care physician years ago that she had some deteriorating joints in both knees. She was given an ace wrap and advised to rest. Ms. Keffer completed an Employees' and Physicians' Report of Occupational Injury or

1

Disease on July 5, 2016, alleging a work-related injury on June 30, 2016. Section II of the Form was completed by the staff at MedExpress Urgent Care.

The claims administrator issued an Order dated August 4, 2016, holding the claim compensable for right knee pain. An additional Order issued on September 8, 2016, approved the authorization for an MRI of the right knee and six sessions of physical therapy, as requested by ARH Primary Care Associates. An MRI report from Beckley Area Regional Hospital dated September 26, 2016, revealed marked medial displacement of the medial meniscus – probable meniscal root tear.

On November 3, 2016, Ms. Keffer was seen by S. Brett Whitfield, M.D., for evaluation. He noted that she suffered a right knee injury on June 20, 2016. She complained of swelling and falls, caused by her knee giving way. Dr. Whitfield noted that the right knee MRI performed at Beckley Area Regional Hospital demonstrated bony edema about the trochlea groove with degenerative changes noted in the patellofemoral space, which were grade III chondromalacia changes. There was a tear of the medial meniscus from its root attachment and the meniscus was further displaced medially due to it. The lateral meniscus demonstrated increased signal but was not clearly indicative of a meniscal tear. The anterior cruciate ligament and posterior cruciate ligament were both intact. The medial collateral ligament and lateral collateral ligament were also intact. Dr. Whitfield's assessment was medial meniscus traumatic root tear, right knee; degenerative chondromalacia changes grade III, right knee; and synovitis, right knee. He stated that

> "[g]iven the degenerative changes, I do feel she would benefit from at least an attempt at an injection to see if this would give her relief and allow her to live with the meniscal tear. If the injection does not give her relief, we would need to discuss either debridement or repair of the meniscal root tear of the medial meniscus."

Dr. Whitfield further stated, "I do feel that the meniscus tear was traumatic but the degenerative changes in the knee are longstanding." He requested a cortisone injection and physical therapy for six weeks. On December 19, 2016, the claims administrator approved a right knee injection as requested by Dr. Whitfield. A December 23, 2016, Order approved a cortisone injection of the right knee.

On February 7, 2017, Joseph Grady, M.D., completed an independent medical evaluation based upon his physical examination of Ms. Keffer and review of the medical records. He diagnosed right knee medial meniscus tear superimposed on some pre-existing degenerative chondromalacia. He noted that Dr. Whitfield was pursuing arthroscopic surgery and he believed that Ms. Keffer is a candidate for the surgery to treat the meniscus tear. Dr. Grady could not specifically associate the pre-existing degenerative chondromalacia with the June 30, 2016, injury. He opined that Ms. Keffer would likely require twelve weeks of physical therapy following surgery. Dr. Grady opined that she was not at maximum medical improvement.

Ms. Keffer returned to Dr. Whitfield on June 1, 2017, for re-evaluation of her right knee. She had no relief from the injection that she had received earlier in the year, and she had not been able to return to work. Because conservative treatment failed, Dr. Whitfield gave Ms. Keffer the choice of living with her current condition or arthroscopic surgery. Ms. Keffer opted for surgery.

The August 30, 2017, operative report indicates that Dr. Whitfield's pre-operative diagnosis was:

> "right knee traumatic tear, posterior horn medial meniscus attachment. The post-operative diagnoses were fight knee traumatic tear, posterior horn medial meniscus attachment; small traumatic tear, posterior horn lateral meniscus, right knee; grade III chondral changes apex of the patella, area grade for chondral loss of medial femoral condyle, 1 cm x 2 cm far medially; and multiple cartilaginous loose bodies, right knee."

The surgery was surgical arthroscopy of the right knee with debridement of complex traumatic tear, posterior horn medial meniscus, posterior horn lateral meniscus, and removal of multiple loose bodies in the right knee.

On September 14, 2017, Dr. Whitfield noted that Ms. Keffer was two weeks post arthroscopic surgery of the right knee. She continued to have pain and trouble with flexion. The evaluation demonstrated full extension to 110 degrees of flexion with pain. There was no effusion. Ms. Keffer was advised to continue to work on range of motion and stretching. Dr. Whitfield ordered physical therapy. He reported, that "we did find cartilage loss which is problematic long term regarding her knee which may be why she is not recovering as quickly as normal knee arthroscopy." Ms. Keffer was given a work excuse through November 27, 2017.

Ms. Keffer returned to Dr. Whitfield on November 30, 2017, with complaints of increased swelling and pain. She reported difficulty with ambulation and long periods of standing. The assessment was right knee effusion and status post right knee arthroscopy with grade III-IV chondral changes medial femoral condyle and debridement of meniscal tearing. Dr. Whitfield discussed that arthritis can be made worse with injuries and it is possible she is now having more pain from the degenerative changes in the knee. He advised an injection of cortisone and stated that "if this does not give her relief, the next step would be a Monovisc injection." When Ms. Keffer treated with Dr. Whitfield on January 25, 2018, for continued right knee pain, he opined that she had reached maximum medical improvement in terms of improvement that she would expect to have from the meniscal tearing and debridement. Dr. Whitfield stated, "[t]he pain now is related to arthritic changes in the medial femoral condyle and I feel that the focus of treatment should be to try to decrease the symptoms from arthritis." He indicated that "the next step would be a viscosupplementation shot to try to give her mechanical relief of arthritic grinding." He explained that she may require knee replacement at some point.

On February 28, 2018, Dr. Grady completed a second independent medical evaluation of Ms. Keffer's condition. He noted that she underwent surgery with Dr. Whitfield on August 30, 2017. She resigned her employment and applied for Social Security Disability benefits. Ms. Keffer

reported difficulty with any sort of prolonged walking or standing, and particular difficulty with running, squatting, or kneeling because of her knee discomfort. The assessment was status post right knee arthroscopic partial medial meniscectomy and removal of loose bodies. Dr. Grady noted no ligamentous instability of the knees. He recommended a release to light duty for an eight-hour workday, and determined that Ms. Keffer had reached her maximum degree of medical improvement. He rated Ms. Keffer's permanent impairment under the American Medical Association's *Guide to the Evaluation of Permanent Impairment*, (4th ed. 1993) to be 1% impairment for her partial medial meniscectomy. Dr. Grady recommended no impairment under Table 41 for range of motion. By Order of the claims administrator dated March 19, 2018, Ms. Keffer was granted an award of 1% permanent partial disability based upon the recommendation of Dr. Grady. Ms. Keffer protested the claims administrator's award.

In support of her protest, Ms. Keffer submitted the report of Robert Walker, M.D., a Board-Certified Specialist in Occupational Medicine, dated September 7, 2018. Using Table 41 of the AMA *Guides*, Dr. Walker placed Ms. Keffer into the severe category for 14% whole person impairment. He apportioned 3% to a pre-existing condition and assigned the remaining 11% for complex medial meniscus tear, lateral meniscus tear, and foreign bodies within the knee joint. Dr. Walker noted that Ms. Keffer will probably need a total knee replacement in the future due to her injury. In a revised report dated October 4, 2018, Dr. Grady opined that Dr. Walker's apportionment of 3% out of a total of 14% for a pre-existing condition was underestimated.

By decision of May 8, 2019, the Office of Judges affirmed the March 19, 2018, award of 1% permanent partial disability. The Office of Judges determined that Dr. Grady's report was more reliable than Dr. Walker's report. The Office of Judges noted that Ms. Keffer's knee flexion was seventy-five degrees and extends to fifteen degrees less than neutral. The Office of Judges found that the findings would place the impairment in the "moderate" category of Table 41 with a rating of 8%. It was noted that on page 4, under the Summary and Impairment Rating section of the report, Dr. Walker stated that Ms. Keffer's flexion contracture is -22 degrees, placing the impairment in the "severe" category. There was no explanation of how the finding of -15 degrees became -22 degrees for rating purposes, nor any way to determine if it was the -15 degrees finding, or the -22 degrees finding, that represented the actual finding of Dr. Walker. Accordingly, the Office of Judges affirmed the claims administrator's March 19, 2018, Order. By Order of October 21, 2019, the Board of Review adopted the findings of fact and conclusions of law of the Office of Judges and affirmed the decision.

After review, we agree with the decision of the Office of Judges, as affirmed by the Board of Review. Because Dr. Walker's report was internally inconsistent, his report is less reliable than the report of Dr. Grady. The Office of Judges clearly explained that the preponderance of the evidence in the record supports a finding that Ms. Keffer is entitled to a 1% permanent partial disability award, as awarded by the claims administrator.

For the foregoing reasons, we find that the decision of the Board of Review is not in clear violation of any constitutional or statutory provision, nor is it clearly the result of erroneous conclusions of law, nor is it based upon a material misstatement or mischaracterization of the evidentiary record. Therefore, the decision of the Board of Review is affirmed.

Affirmed.

**ISSUED: December 11, 2020**

**CONCURRED IN BY:**

Chief Justice Tim Armstead
Justice Margaret L. Workman
Justice Elizabeth D. Walker
Justice Evan H. Jenkins
Justice John A. Hutchison